IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS B. EVANSON, et al.,<br><br>Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:05-CR-805-TC |
| ZEPHER INVESTMENT, L.L.C., and<br>BRUTUM INVESTMENTS, L.L.C.,<br><br>Third-Party Claimants | |

Zepher Investment, L.L.C. (Zepher) claims that it is entitled to a mortgage interest in real property located at 3645 East Weber Canyon Road, Oakley Utah (the Oakley Property), which was forfeited to the federal government.[1] (See Notice of Claim of Interest (Doc. 670).) The Government, in its Motion for Summary Judgment, argues that Zepher does not have a valid claim to the Oakley Property because Zepher acquired its interest in the Oakley Property after the acts giving rise to criminal forfeiture occurred and Zepher was not reasonably without cause to believe the property was subject to forfeiture at the time Zepher acquired its interest.

---

[1] Zepher filed a joint claim on the Oakley Property with Brutum Investments, L.L.C. Brutum has since settled with the government.

The court agrees with the Government and denies Zepher's motion to have the final order of forfeiture amended to include Zepher's claimed interest in the Oakley Property.

## FACTUAL AND PROCEDURAL BACKGROUND

**The Criminal Forfeiture**

On November 2, 2005, a federal grand jury in Utah indicted Dennis Evanson and five Co-Defendants, including Brent Metcalf, Zepher's owner,[2] on charges of conspiracy, tax evasion, and aiding and assisting the preparation of false income tax returns. The conspiracy count charged all six Defendants with taking part in a tax fraud that began in about April 1994. The indictment had a notice to seek forfeiture of a number of assets, including the Oakley Property. Mr. Metcalf was not named in the forfeiture notice.

Before trial, Mr. Metcalf plead guilty to the conspiracy charge and one count of aiding and assisting the preparation of a false tax return. In his Statement by Defendant in Advance of Plea of Guilty, Mr. Metcalf admitted that he conspired with Mr. Evanson and others in a fraud to deceive the IRS. (Statement in Advance of Plea of Guilty (Doc. 461) ¶ 11.) He also admitted that he did the bookkeeping for the entities named in the indictment as part of the fraudulent scheme. (Id.) Cottonwood Financial Services L.C. (Cottonwood), owned by Mr. Evanson and Mr. Metcalf, was one of the entities named in the indictment. As discussed later in this order, at one time Cottonwood held title to the Oakley Property.

Mr. Metcalf testified at the trial of Mr. Evanson and the only other Defendant to go to trial (all others had plead guilty). On February 12, 2008, the jury convicted Mr. Evanson of

---

[2]Zepher is "an investment vehicle" for Brent Metcalf. (Decl. of Brent Metcalf ¶ 1, attached to Mem. Opp'n to Pl.'s Mot. Summ. J. (Doc. 716).)

2

conspiracy and multiple counts of tax evasion and aiding and assisting in the preparation of a false income tax return. (The other Defendant was acquitted.)

On June 16, 2008, the court held a forfeiture hearing to determine if the assets listed in the indictment were forfeitable. (Mr. Evanson did not request that a jury hear the forfeiture allegation.) At the forfeiture hearing, a special agent with the IRS testified that he had traced fees Mr. Evanson received from the clients in his tax scheme to purchase and remodel the Oakley Property. United States v. Evanson, No. 2:05-CR-805-TC, 2008 WL 3107332, at * 7 (D. Utah Aug. 4, 2008). To trace the fees, the special agent relied, in part, on the ledgers Mr. Metcalf had prepared. Based on the evidence received at the hearing, the court ordered that Mr. Evanson forfeit the Oakley Property (and other assets identified in the indictment) to the government. (Id. at *10.) The court signed an Amended Final Order of Forfeiture, which included the Oakley Property, on February 2, 2010. (Doc. 649.)

**The Oakley Property**

Mr. Evanson purchased the Oakley Property in November 1, 2000. He financed part of the purchase with a mortgage loan from Countrywide Home Loans (Countrywide). Shortly after that, Mr. Evanson quit-claimed the Oakley Property to his company, Oakley Investment Properties.

In 2005, one of Mr. Metcalf's clients, Jon Quitiquit, asked Mr. Metcalf if he could find an investment for him that would give a higher return. Mr. Metcalf talked with Mr. Evanson and the two decided that Mr. Quitiquit could replace Countrywide as the mortgage holder on the Oakley Property. The transaction was structured by Mr. Metcalf and involved the following steps: (1) Mr. Quitiquit's self-directed IRA, which operated through an entity called Visions

Investment Group, L.L.C. (Visions), loaned $200,000 to Cottonwood.[3] (Mr. Metcalf was the manager and registered agent for Visions. Visions' bank statements were mailed to Mr. Metcalf.); (2) Mr. Evanson signed a note and deed of trust on behalf of Oakley Investment Properties in favor of Cottonwood; (3) The $200,000 was used to pay off the Countrywide mortgage on the Oakley Property; (4) Mr. Metcalf, as manager for both Cottonwood and Visions, signed a document transferring Cottonwood's security interest in the Oakley Property to Visions. Mr. Metcalf was the only person who signed the transfer document.

Even though the note was between Cottonwood and Oakley Investment Properties, all payments on the loan went to Visions. Mr. Metcalf knew this because he did all the accounting reflecting the various transactions.

On June 21, 2005, the United States recorded a lis pendens against the Oakley Property. Not long after the United States filed the lis pendens and Mr. Evanson and Mr. Metcalf and the others had been indicted, Mr. Quitiquit told Mr. Metcalf that he did not want to be associated with the transaction. On May 1, 2006, Zepher and Brutum (an entity owned by Brent Metcalf's brother Joel's self-directed IRA) purchased the mortgage. Brent Metcalf did the accounting that reflected this transaction.[4]

---

[3] Mr. Metcalf mistakenly believed that Visions could not loan money directly to Oakley Investment Properties, so he structured the transaction to have Visions loan the money to Cottonwood. Cottonwood then loaned the money to Oakley Investment Properties.

[4] On May 1, 2006, Vision assigned its interest in the Oakley Property to Zepher. No documents reflect Brutum's interest in the Oakley Property.

## ANALYSIS

### Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it demonstrates, through pleadings, depositions, answers to interrogatories, admissions on file, or affidavits, that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when, after viewing the record and making all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

The opposing party's response must set forth specific facts showing a genuine issue for trial, and it "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." Anderson, 477 U.S. at 252.

### Criminal Forfeiture

Section 853 of Title 21 of the United States Code and Federal Rule of Criminal Procedure 32.2 govern this criminal forfeiture ancillary proceeding. Section 853(c) provides that all "right, title and interest in [property subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture under this section." Therefore, the United States held title to the Oakley Property when Mr. Evanson used money from his tax scheme to purchase and remodel the property.

A petitioner who claims an interest in forfeited property must show either that he

5

acquired ownership of the property before the criminal acts occurred or that he subsequently acquired the property as a bona fide purchaser for value. 21 U.S.C. § 853(n). Mr. Metcalf does not argue that he held an interest in the Oakley Property before the tax scheme began. Instead, he claims that Zepher is a bona fide purchaser for value.

To establish that Zepher is a bona fide purchaser for value, Mr. Metcalf must establish that he, as the owner of Zepher, "was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture . . . ." 21 U.S.C. § 853(n)(6)(B). As the above facts make clear, Mr. Metcalf could not have reasonably believed that the Oakley Property was not subject to forfeiture. Among other things, Mr. Metcalf was a co-conspirator in the criminal tax scheme that generated the money used by Mr. Evanson to purchase and remodel the Oakley Property. He knew the source of that money because he did the accounting and kept the ledgers that showed where the money came from. He was named in the indictment that listed the Oakley Property as subject to forfeiture. He orchestrated the transactions by which Mr. Quitiquit acquired the mortgage interest in the Oakley Property and then assigned his interest to Zepher.

Apparently recognizing the futility of arguing that he reasonably believed that the Oakley Property was not subject to forfeiture, Mr. Metcalf makes two arguments on behalf of Zepher. First he contends that if Countrywide could qualify as a bona fide purchaser for value, then so should Zepher. Second, he maintains that the court should ignore what Mr. Metcalf knew and consider only what Mr. Quitiquit, Vision's owner, reasonably believed. Neither of the arguments is persuasive because it is Zepher, not Countrywide or Visions, that must show that it is a bona fide purchaser for value of the interest in the Oakley property. Zepher must establish that at the time of <u>its</u> acquisition of the interest in the Oakley Property, that is, on May 1, 2006, that its

6

owner, Brent Metcalf, was reasonably without cause to believe that the property was subject to forfeiture. And as discussed above, Zepher cannot meet this burden.

The other arguments raised by Zepher similarly are without merit. Forfeiture of Mr. Metcalf's interest in the Oakley property is not a "windfall" to the Government nor is it excessive punishment for Mr. Metcalf. The Oakley Property became the property of the Government when Mr. Evanson used criminal proceeds to purchase and remodel it. To take Mr. Metcalf's interest in the Oakley Property from Mr. Metcalf, who was deeply involved in the tax scheme, is not cruel or excessive punishment.

## **ORDER**

For the reasons set forth above, the United States Motion for Summary Judgment as to Zepher Investment, L.L.C.'s Claim (Doc. 703) is GRANTED and Zepher's petition (Doc. 670) is DISMISSED.

DATED this 12th day of March, 2014.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge